# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **JOSEPH REISWERG,** ) | |
| ) | |
| **Plaintiff/Counterclaim Defendant,** ) | |
| ) | |
| **vs.** ) | **CAUSE NO.  1:07-cv-42-WTL-DML** |
| ) | |
| **GREAT AMERICAN INSURANCE CO.,** ) | |
| ) | |
| **Defendant/Counterclaimant, Third-Party** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **PAM STATOM,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion for summary judgment filed by Great American Insurance Company ("Great American") (dkt. #110).  The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion  for the reasons set forth below.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(1) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material

fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

Finally, the non-moving party bears the burden of specifically identifying the relevant evidence

of record, and "the court is not required to scour the record in search of evidence to defeat a

motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## BACKGROUND FACTS

The facts of record viewed in the light most favorable to Plaintiff Joseph Reiswerg are as

follow.  Reiswerg is an attorney who practices in Indiana.  Beginning in 1998, Reiswerg

purchased professional liability insurance from Defendant Great American.  After his original

policy lapsed due to Reiswerg's failure to pay the premiums, Great American issued a new

policy, policy number LPL 554-2492-00, which was in effect from December 9, 2004, to

December 9, 2005 ("the Policy").

In October 2000, Reiswerg was retained by Third-Party Defendant Pamela Statom to

represent her in a medical malpractice action arising out of surgery Statom underwent at the

Veteran's Administration Hospital in Indianapolis ("VA") in December 1998.  According to

Reiswerg, Statom signed a claim form (hereinafter referred to as "Tort Claim Notice") on

November 9, 2000, and it was "transmitted" to the VA.[1]  However, in a September 26, 2001,

letter sent by the VA Regional Office to Reiswerg denying her claim, the VA stated that the Tort

Claim Notice was received on February 23, 2001, more than two years from the date of Statom's

---

[1]Reiswerg has submitted the affidavit of his legal assistant, Jennifer Wirkner, and cites it
for the proposition that the Tort Claim Notice was mailed "in November 2000."  Actually,
Wirkner's affidavit states that she prepared the Notice and cover letter "and deposited the same
in the U.S. Mail," but it does not say when she did so.  The Court notes that Reiswerg's expert
witness also relies upon the false premise that Wirkner's affidavit demonstrated that the Notice
was mailed in November 2000.

surgery, and therefore beyond the applicable statute of limitations.

Because the Tort Claim Notice was sent via regular U.S. mail, Reiswerg has no receipt showing when it was mailed or when the VA received it.  The record does contain a letter from Reiswerg's legal assistant to Statom dated November 20, 2000, that begins "[e]nclosed please find a copy of the claim we filed with the Department of Veteran Affairs" and another letter from Reiswerg to Statom dated January 18, 2001, that begins "I spoke with the Veterans Administration Office and was told that they are going to make a determination on your malpractice claim shortly."  Reiswerg has submitted an affidavit in which he states that he sent that letter the day after he spoke to VA attorney John Houff, who "indicated that this claim was being investigated and that there would be a determination made shortly."  Reiswerg also has testified that during this conversation Houff told him that Statom's claim was "somewhere on his desk."

Reiswerg sought reconsideration of the VA Regional Office's determination on behalf of Statom.  By letter dated May 31, 2002, the VA again denied Statom's claim, finding that there was "no credible evidence" of negligence with regard to Statom's care.  Because the letter of denial did not mention the statute of limitations issue, Reiswerg assumed that the VA had accepted his assertion that Statom's Tort Claim Notice was mailed to and received by the VA Regional Office in November 2000.[2]

---

[2]As evidence that this assumption is correct, Reiswerg points to the following language in a letter he received from the VA acknowledging receipt of his request for reconsideration:  "We have requested the Regional Counsel's files on this claim, and, assuming the request was timely received, we will begin our reconsideration."  Reiswerg argues that the "request" referred to in this sentence is the Tort Claim Notice, and the fact that the VA reviewed the claim as requested means that it determined that the Notice was timely.  In fact, however, the "request" referred to is the request for reconsideration itself, as evidenced by the immediately preceding sentence:

In a letter dated October 4, 2002, Statom indicating that she had "grave concerns" about his handling of her case.  Specifically, Statom complained that she discussed with Reiswerg the issue of retaining an expert to support her claim on seventeen separate occasions and claims that Reiswerg assured her that he would obtain an expert, but he never did.  On or about November 1, 2002, Statom complained in writing to the managing director of Cohen, Garelick & Glazier, the law firm with which Reiswerg was associated, regarding her dissatisfaction with Reiswerg's handling of her case; the statute of limitations issue was not mentioned in that letter.  Shortly thereafter, Reiswerg sent an email to Statom in which he stated that because she "seem[ed] to have a lack of confidence in [his] handling of [her] case," he would file her federal court case appealing the VA's determination, but then he would withdraw his appearance because he would not "represent someone who questions my every move in a case."

As promised, Reiswerg filed a complaint in this district on Statom's behalf seeking review of the VA's denial of her claim and then sought leave to withdraw his appearance after new counsel had appeared for Statom.  Statom's new counsel soon withdrew her appearance as well, leaving Statom to proceed *pro se*.  At the initial pretrial conference in that case, counsel for the United States expressed his intention to move for dismissal on the ground that Statom failed to timely submit her Tort Claim Notice, taking the position that the Notice was received by the VA on February 23, 2001, the date of the file stamp on the Notice.  On August 23, 2003, Statom sent Reiswerg a letter informing him of this fact and asking him to provide her with help in rebutting the untimeliness assertion.  Her letter concluded:

---

"To be timely filed, a request for reconsideration must have been received within 6 months of the date of the mailing of the Regional Counsel's denial."  Therefore, this letter provides no support for Reiswerg's position.

I'm sure you understand that if the Court does dismiss this case, due to untimely filing, I will then be forced to pursue damages of legal malpractice against you specifically.  This most certainly is not my desire, and I wish justice in regard to VA Hospital and the surgeons who are responsible for my damages.  **Therefore, I am making a last plea that if there is anything further that you, or I can do from a legal stand point, in regards to this untimely allegation, that we pursue whatever else can be done.**  You have far more superior knowledge than I, and I am asking that you consider any possible further response, to avoid this case being dismissed due to untimely filing.

(emphasis in original).

The court granted the United States' motion to dismiss on April 13, 2004, finding that Statom's Tort Claim Notice was untimely.  Reiswerg was unaware of that dismissal when he submitted his application for the Policy in December 2004.  That application asked Reiswerg if he was aware of  any "incidents, circumstances, errors, omission or offenses which may result in a claim being made against" him; he answered that he was not.

On November 10, 2005, Statom filed suit against Reiswerg asserting claims for legal malpractice, constructive fraud, and fraud.  The following day, Reiswerg notified Great American of the claim and requested that it defend and indemnify him.  Great American denied coverage for the claim.  In response, Reiswerg filed this action seeking declaratory judgment that Great American is obligated under the Policy to defend and indemnify him and also seeking damages for bad faith.  Great American has filed a counterclaim for declaratory judgment against Reiswerg and Statom.[3]

## DISCUSSION

The Policy is a claims-made policy, which means generally that it provides coverage for

---

[3]Statom originally pled affirmative defenses asserting that the Policy offers illusory coverage and that Great American's denial of coverage is against public policy.  Statom has now withdrawn those affirmative defenses.

claims that are made against the policyholder during the effective period of the policy regardless

of when those claims accrued.  There is no dispute that Statom's malpractice claim against

Reiswerg was made during the time the Policy was in effect.  However, Great American asserts

that Statom's claim falls under a provision in the Policy (hereinafter referred to as "the

Exclusion") that excludes coverage for the following:

> Any Claim arising out of acts, errors, omissions or personal injuries which
> occurred prior to the effective date of this policy if, on or prior to such date, you
> knew or had a reasonable basis to believe either that a professional duty had been
> breached or that a Claim would be made.

Under Indiana law, an insurance contract "is subject to the same rules of interpretation as

other contracts."  *P.R. Mallory & Co., Inc. v. American Cas. Co. of Reading, PA.*, 920 N.E.2d

736, 749 (Ind. App. 2010); *see also Bosecker v. Westfield Ins. Co.*,724 N.E.2d 241, 243 (Ind.

2000).

> Thus, if the language in the insurance policy is clear and unambiguous, it should
> be given its plain and ordinary meaning. However, if the language of the policy is
> ambiguous, we may apply the rules of construction in interpreting the language.
> When an insurance policy contains an ambiguity, it should be strictly construed
> against the insurance company. A policy is ambiguous only if it is susceptible to
> more than one interpretation and reasonably intelligent persons would differ as to
> its meaning.

*Id.*  "The proper interpretation of an insurance policy, even if it is ambiguous, generally presents

a question of law that is appropriate for summary judgment."  *Bosecker*,724 N.E.2d at 43.

The Exclusion is not ambiguous.  By its plain language, a claim is excluded if, prior to

the effective date of the policy (December 9, 2004), one of the following was true:

- Reiswerg knew (subjectively) that Statom would make a claim against him

- Reiswerg knew (subjectively) that he breached a professional duty vis-a-vis

    Statom;

6

- Reiswerg had a reasonable basis to believe (objectively) that he breached a professional duty vis-a-vis Statom; or

- Reiswerg had a reasonable basis to believe (objectively) that Statom would make a claim against him.

The facts of record, viewed in the light most favorable to Reiswerg, clearly establish that neither of the first two conditions existed, inasmuch as Reiswerg has testified that he did not know that he had breached a professional duty in his handling of Statom's case and he did not know that she would file a claim against him–in fact, he believed that neither was true.  However, it is equally clear to the Court that the fourth condition was met; that is, prior to December 9, 2004, Reiswerg had a reasonable basis to believe that Statom would make a claim against him.[4]

As of August 2003, Reiswerg knew that the United States had informed the court and Statom that it intended to move to dismiss Statom's case on the ground that Statom's Tort Claim Notice was untimely; he knew that Statom was proceeding *pro se* in that case;[5] and he knew that

_____

[4]Great American argues that whether Reiswerg had a reasonable basis to believe that Statom would file a claim against him is a question of law; Reiswerg argues that it is a question of fact.  In this case, the result is the same either way, because even if it would ordinarily be a question of fact, it is properly decided as a matter of law where, as here, only one conclusion can be drawn from the undisputed facts of record.  *See Worth v. Tamarack Am.*, 47 F.Supp.2d 1087 (S.D. Ind. 1999), *aff'd*, 210 F.2d 277 (7th Cir. 2000) (granting summary judgment in favor of insurer, finding "[W]e harbor no reluctance in concluding that Worth had a reasonable basis to believe . . . that he breached a professional duty to Clock"); *see generally McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 911 (Ind. 2009) (issue that is usually matter of fact becomes matter of law "where the evidence permits only a single inference").

[5]Inasmuch as Reiswerg argues that he was prejudiced in his own defense of Statom's malpractice claim because Great American refused to pay for his defense and he was forced to proceed *pro se*, Reiswerg must acknowledge that Statom's *pro se* handling of her claim against the VA carried with it a substantially higher risk of dismissal than there would have been if she had been represented.  That risk is relevant to the calculation of whether Reiswerg had a reasonable belief that she would ultimately file a malpractice claim against him.

Statom planned to sue him if her case was dismissed.  Reiswerg also knew that he (and therefore Statom) had no proof that the Tort Claim Notice was timely filed.  While he had procured the affidavit of his assistant, the affidavit did not actually state when the notice was mailed, and Reiswerg's own affidavit describing his conversation with a VA lawyer is far from definitive proof of timely filing.  Thus, while Reiswerg may subjectively have been confident that the United States would not be successful in getting the case dismissed, the facts did not warrant that confidence.

As Reiswerg implicitly acknowledges in his brief, the question posed by the Exclusion–whether Reiswerg had a reasonable basis to believe that Statom would make a Claim against him–is simply another way of asking whether Statom's malpractice suit against Reiswerg was reasonably foreseeable prior to December 9, 2004, given the information Reiswerg had.[6] Clearly it was.[7]  Reiswerg's argument that a reasonable attorney in his position would have had a reasonable basis to believe that a claim *might* be made by Statom, but not that a claim *would* be made, is unavailing.  For the Exclusion to apply, Reiswerg did not have to have information that would lead a reasonable attorney to believe a claim by Statom was inevitable; rather, Statom's

---

[6]*See* Reiswerg Brief at 16 ("Whether Reiswerg could have reasonably foreseen Statom's malpractice claim is an objective test, but it must be determined based only on facts and circumstances of which Reiswerg was subjectively aware.").

[7]Reiswerg argues that Statom's claim was not foreseeable because his attorney-client relationship with her ended amicably.  This argument ignores the fact that Statom's August 2003 letter makes it clear that she intended to sue him for malpractice if the court dismissed her claim on untimeliness grounds.  Reiswerg also argues that by December 2004 it was reasonable for him to believe that the United States' motion to dismiss had been denied due to the length of time that had passed with no contact from Statom.  The fact is, however, that as of August 2003 it was foreseeable that Statom would sue him, and the mere passage of time, without more, did not move that foreseeable claim from the excluded category to the covered category.

claim had to be reasonably foreseeable.  Given the fact that Statom expressly threatened to sue

Reiswerg if her claim was dismissed on untimeliness grounds, along with the facts that Statom

was representing herself and she had no solid evidence that her tort claim notice had been timely

filed, Statom's malpractice claim against Reiswerg was reasonably foreseeable prior to

December 9, 2004.  Accordingly, the Exclusion applies and Great American has no duty to

defend or indemnify Reiswerg with regard to Statom's malpractice claim against him.[8]

## CONCLUSION

For the reasons set forth above, the Court determines that the Exclusion applies and

Statom's malpractice claim is not covered by the Policy.  This determination resolves all of the

claims between the parties.  Specifically, Great American is entitled to judgment on Reiswerg's

claims against it and on its claim for declaratory judgment against Reiswerg and Statom.

SO ORDERED:   03/18/2010

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic notification

_____

[8]In light of this determination, it is not necessary for the Court to resolve Great
American's alternative argument that the Policy is void because Reiswerg made material
misrepresentations in his application.  The Court notes, however, that Reiswerg acknowledges
that his claim that Great American waived its right to rescind by delaying its tender of his
premiums depends upon whether he was prejudiced by that delay.  Reiswerg attempts to
demonstrate the requisite prejudice by pointing out that he could have used his premiums to pay
an attorney rather than defending himself *pro se* in Statom's claim against him.  However,
Reiswerg offers no evidence that he would have accepted Great American's tender of premiums
and foregone his claim for coverage and bad faith.

9